**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

Luisa O. Baez-Lara,

Plaintiff,

v.

Equifax Information Services, LLC,

Defendant.

Case No.: ____________________

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1. This is a civil action for actual damages, statutory damages, punitive damages, and costs brought by Plaintiff Luisa O. Baez-Lara ("Ms. Baez-Lara" or "Plaintiff") against Defendant Equifax Information Services, LLC ("Equifax" or "Defendant") for willful and negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"). This complaint is filed pursuant to the pro se pleading standards of Erickson v. Pardus, 551 U.S. 89 (2007), and Plaintiff respectfully requests that the Court construe it liberally.

2. Equifax is a consumer reporting agency ("CRA") that assembles and sells consumer credit information. When a consumer requests her own credit file -- the so-called "file

disclosure" -- the FCRA commands Equifax to "clearly and accurately disclose . . . [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). Equifax is equally obligated to follow reasonable procedures to assure maximum possible accuracy of the information contained in consumer reports it prepares and disseminates to third parties. 15 U.S.C. § 1681e(b).

3. Equifax systematically withholds material data fields from consumers' file disclosures while simultaneously providing that same complete information to third-party purchasers of consumer reports. The May 12, 2026 disclosure provided to Ms. Baez-Lara (Confirmation No. 6132559764) contains in excess of one hundred (100) blank, missing, or unresolvable data fields spread across every account in her file. The identical pattern of missing Actual Payment Amount fields appearing uniformly across every open revolving account in the disclosure -- regardless of furnisher, account age, or account status -- is not attributable to random error. It reflects a deliberate, systemic policy of Equifax's automated disclosure generation system.

4. In addition, the Capital One Bank USA NA account (Account *0392) is reported in the disclosure with a Credit Limit of $3,122 and a High Credit of $3,811 -- a per se internal data inaccuracy in which Equifax's own records contradict themselves. This conflict appears consistently across all twenty-three (23) months of the account's 24-month history table and was disseminated to a third-party creditor as confirmed by the hard inquiry section of the disclosure.

5. Furthermore, the SYNCB/Care Credit account (Account *4678) is reported as a Charge Off carrying Narrative Code 035 ("First Payment Never Received") alongside subsequent payment records, including an Actual Payment Amount of $179 for September 2025, and

blank Actual Payment Amount fields for every subsequent month while the balance continues to grow. This combination of internally contradictory codes and omitted data creates a materially misleading portrayal of the account's history and status that harms Plaintiff's creditworthiness.

6. Plaintiff brings this action to enforce her statutory rights, to obtain a complete and accurate disclosure of her consumer file, and to recover all damages to which she is entitled under the FCRA.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331, as this action arises under the laws of the United States.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District and a substantial part of the events giving rise to the claims occurred here.

## PARTIES

9. Plaintiff Luisa O. Baez-Lara is a natural person residing at 101 Dale St., Apt. 11, Roxbury, Massachusetts 02119. She is a "consumer" as defined by 15 U.S.C. § 1681a(c).

10. Defendant Equifax Information Services, LLC is a Georgia limited liability company with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f) in that, for monetary fees and/or on a cooperative nonprofit basis, it regularly engages in the practice of assembling or evaluating consumer credit information for the purpose of furnishing consumer reports to third parties using means of interstate commerce. As a CRA, Equifax is aware of its obligations under the FCRA, including the obligation

imposed by 15 U.S.C. § 1681g(a)(1) to clearly and accurately disclose to a requesting consumer all information in its file at the time of the request.

## FACTUAL ALLEGATIONS

### A. Credit Report Overview

11. On or about May 12, 2026, Ms. Baez-Lara requested and received her consumer file disclosure from Equifax via the annualcreditreport.com platform. Equifax assigned Confirmation No. 6132559764 to this disclosure (the "May 2026 Disclosure" or "Disclosure"). A true and complete copy of the Disclosure is attached hereto as Exhibit A.

12. Pursuant to 15 U.S.C. § 1681g(a)(1), upon receipt of that request Equifax was obligated to "clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request." The term "file" encompasses "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(g).

13. The Federal Trade Commission ("FTC") has confirmed that a CRA that systematically withholds data from a consumer's own file disclosure while retaining and transmitting that data to third-party purchasers violates Section 609 of the FCRA. FTC Advisory Opinion to Darcy (June 30, 2000) ("Darcy Opinion"), attached hereto as Exhibit B. Courts have held that the operative question under § 1681g is "whether a disclosure is unclear such that the consumer cannot determine the accuracy of the information in that disclosure." Alexander v. Equifax Info. Servs., LLC, 2018 WL 3025939, at *3 (D. Nev. June 15, 2018).

### B. Account-by-Account Inventory of Missing and Blank Data Fields

14. The May 2026 Disclosure contains data fields that are systematically blank, missing, or otherwise unresolvable across all accounts. An itemized account-by-account inventory is attached as Exhibit C. The aggregate total of blank, missing, or irreconcilably incomplete data fields across Plaintiff's eleven (11) trade lines is in excess of one hundred (100) fields. The following describes the primary deficiencies by trade line.

**Apple Card -- GS Bank USA (Account *1584)**

15. The Apple Card account (Account *1584) was opened December 2, 2024 and carries a Pays As Agreed status. The Actual Payment Amount field is blank for three (3) of the sixteen (16) months reflected in the 24-month history table, including November 2025 and the March 2026 row, which reflects only a $103 scheduled payment with no actual payment recorded despite the account remaining open. The Payment History grid shows "No Data Available" cells for months prior to December 2024 that fall within the account's reporting lifecycle.

**SYNCB/Care Credit (Account *4678)**

16. The SYNCB/Care Credit account (Account *4678) was opened April 20, 2025 and carries a Charge Off status with a Charge Off Amount of $1,424. The following required fields are entirely blank in the Disclosure: (a) Date of Last Activity; (b) Terms Frequency; (c) Activity Designator; and (d) Date Closed. The Actual Payment Amount is blank for all twelve (12) of twelve (12) months reported in the 24-month history table (April 2025 through March 2026), even for months in which a "Last Payment Date" of September 4, 2025 is listed, creating an irreconcilable internal conflict -- the account records reflect a payment event but the Disclosure omits the payment amount. For

months April 2025 and May 2025, the Payment History grid shows "No Data Available" symbols for months that fall squarely within the account's reported active period.

**Wells Fargo Card Serv (Account *5294)**

17. The Wells Fargo account (Account *5294) was opened September 16, 2019 and carries a Pays As Agreed status. The Actual Payment Amount is blank for the February 2025 row in the 24-month history table. The Activity Designator field is blank.

**Macys/Citibank NA (Account *6952)**

18. The Macys/Citibank account (Account *6952) was opened October 21, 2018 and carries a Pays As Agreed status. The Actual Payment Amount field is blank for all twenty-three (23) of twenty-three (23) months reflected in the 24-month history table, despite the account reflecting ongoing monthly payment activity and a non-zero balance throughout the entire reporting period. A consumer reviewing this Disclosure cannot verify whether she has been credited for any payment made during this period.

**Capital One Bank USA NA (Account *0392)**

19. The Capital One account (Account *0392) was opened January 11, 2017 and carries a Pays As Agreed status. The Actual Payment Amount is blank for all twenty-three (23) of twenty-three (23) months reflected in the 24-month history table, despite the account reflecting a continuous, non-zero balance and active monthly scheduled payment obligations. The Activity Designator field is blank. Narrative Code 283 ("Account Previously in Dispute -- Now Resolved by Data Furnisher") appears, indicating a prior dispute was resolved, yet the Disclosure still omits the Actual Payment Amount for the entire reported period.

**Hy Cite Corporation (Account *8256)**

20. The Hy Cite account (Account *8256) was opened May 5, 2023 and carries a Pays As Agreed status. The Terms Frequency field is blank. The Date of 1st Delinquency field is blank. The 24-month history table for November 2025 shows a Past Due Amount of $103 while the Payment History grid for November 2025 reflects a "30 Days Past Due" notation -- but the Disclosure provides no Actual Payment Amount for that month, preventing Plaintiff from assessing whether a payment was credited.

**WFBNA Auto -- Closed (Account *4526)**

21. Although the WFBNA Auto account (Account *4526) was opened in May 2021 and is reported as closed April 2022, Equifax provides no 24-month history table whatsoever for this trade line.

**TD Banknorth -- MA -- Closed (Account *2219)**

22. Although the TD Banknorth account (Account *2219) was active from January 2020 through March 2021, Equifax provides no 24-month history table and no month-by-month balance or payment data.

**Nelnet Loan Servicing -- Closed (Account *8581)**

23. The Terms Frequency field for the Nelnet account (Account *8581) is blank. No 24-month history table is provided, despite the account having 61 months of reviewed history.

**Comenitybank/VictoriaSecret -- Closed (Account *9060)**

24. No 24-month history table is provided for Account *9060, despite 36 months of reviewed history.

**Grameen America, Inc. -- Closed (Account *710B)**

25. No payment history grid and no 24-month history table are provided for Account *710B. The Disclosure indicates 8 months reviewed but provides no monthly data.

26. The systematic appearance of identical blank Actual Payment Amount fields across every open revolving account in the May 2026 Disclosure -- regardless of furnisher, account age, or account status -- confirms that these omissions result from a deliberate, uniform software or policy decision by Equifax, not from random data error. This systemic pattern is direct evidence of willful noncompliance.

27. On information and belief, Equifax maintains the complete and accurate data underlying each of the fields described above in its internal database systems and transmits that complete data to third-party purchasers of consumer reports, including the creditor who conducted the hard inquiry reflected in the Disclosure. Equifax's ability to populate those fields for third-party reports demonstrates its capability to comply with § 1681g(a)(1) while choosing not to do so for Plaintiff's own file disclosure.

**C. Per Se Inaccuracy: High Credit Exceeds Stated Credit Limit -- Capital One Account**

28. The Capital One Bank USA NA account (Account *0392) is reported in the Disclosure with a Credit Limit of $3,122 and a High Credit of $3,811. The High Credit amount of $3,811 exceeds the stated Credit Limit of $3,122 by $689. This internal data conflict appears consistently across all twenty-three (23) months of the 24-month history table -- every single month shows a High Credit of $3,811 against a Credit Limit of $3,122.

29. A creditor or potential creditor reviewing this trade line would receive internally contradictory information: the stated credit limit is $3,122, yet the consumer's highest historical balance is $3,811 -- $689 in excess of the stated limit. This presents either: (a) that Plaintiff exceeded her credit limit by $689, which would be damaging negative

information; (b) that the stated credit limit is incorrect; or (c) that both figures contain errors. Equifax's reporting of these two contradictory figures simultaneously is a per se factual inaccuracy that is materially misleading to any reviewing creditor. Gorman v. Wolpoff and Abramson, LLP, 584 F.3d 1147 (9th Cir. 2009).

30. On information and belief, Equifax failed to maintain basic data-integrity procedures capable of detecting and preventing the reporting of a balance history that consistently exceeds the stated credit limit of the same account, constituting a failure to maintain reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b).

**D. Misleading Reporting: SYNCB/Care Credit Charge-Off**

31. The SYNCB/Care Credit account (Account *4678) is reported as a Charge Off with a current balance of $1,424 equal to the full Charge Off Amount. The account shows a Last Payment Date of September 4, 2025, yet the Actual Payment Amount for September 2025 is blank in certain rows of the Disclosure. The account's 24-month history table shows a balance of $896 in September 2025 alongside a listed Last Payment Date of September 4, 2025 and a $179 Actual Payment Amount -- but for every subsequent month (October 2025 through March 2026), the Actual Payment Amount field is blank while the balance continues to grow from $1,086 to $1,424.

32. The combined reporting of: (a) an active charge-off status; (b) a growing balance post-charge-off with no corresponding payment credits; (c) Narrative Code 035 ("First Payment Never Received") coexisting with later payment activity; and (d) blank Actual Payment Amount fields throughout the charge-off period creates a materially misleading picture of the account's status that is confusing to reviewing creditors and harmful to Plaintiff's creditworthiness. This omission of contextualizing account information renders

a technically recorded entry misleading in its overall effect. Pittman v. Experian Info. Sols., Inc., 901 F.3d 619, 639 (6th Cir. 2018).

**E. Third-Party Dissemination: Hard Inquiries Establishing Article III Standing**

33. The May 2026 Disclosure reflects one (1) hard inquiry, confirming that Equifax affirmatively sold and disseminated Plaintiff's consumer report -- containing the inaccurate and incomplete information described herein -- to a third-party creditor.

34. On April 9, 2026, Defendant transmitted Plaintiff's consumer report to Capital One Financial. This dissemination constitutes a concrete, particularized injury-in-fact sufficient to establish Article III standing under TransUnion LLC v. Ramirez, 594 U.S. 413 (2021), because Plaintiff's inaccurate and incomplete consumer file was published to an entity that relied upon it in evaluating Plaintiff's creditworthiness. The report transmitted on that date contained the High Credit/Credit Limit discrepancy on the Capital One account and the incomplete data fields documented throughout this Complaint.

**F. Willfulness Allegations**

35. Under Safeco Insurance Co. of America v. Burr, 551 U.S. 47 (2007), a defendant acts willfully under the FCRA when it knowingly or recklessly disregards its statutory obligations in a manner that is objectively unreasonable and carries a risk of harm substantially greater than mere carelessness. Equifax's violations of 15 U.S.C. §§ 1681g(a)(1) and 1681e(b) were willful for the following independent and cumulative reasons:

36. First, the FTC Advisory Opinion to Darcy (June 30, 2000) -- issued over twenty-five years before Plaintiff's Disclosure -- expressly placed all CRAs, including Equifax, on

notice that the systematic omission of information from consumer file disclosures violates Section 609 of the FCRA. Any CRA continuing to engage in such conduct after twenty-five years of explicit regulatory notice acts in a manner that is objectively unreasonable under Safeco.

37. Second, the identical pattern of missing Actual Payment Amount fields appearing across all open revolving accounts in the May 2026 Disclosure -- regardless of furnisher or account age -- is not attributable to individual data-furnisher failures. It reflects a systemic, programmatic omission by Equifax's own disclosure generation system, confirming that the incomplete disclosure is the product of a deliberate policy choice rather than inadvertent error. Williams v. First Advantage LNS Screening Solutions, Inc., 947 F.3d 735 (11th Cir. 2020).

38. Third, the simultaneous reporting of a High Credit amount ($3,811) exceeding the stated Credit Limit ($3,122) on the Capital One account -- an internal data conflict that a basic data-integrity check would catch -- evidences the absence of any reasonable procedure to assure maximum possible accuracy. The failure to implement even rudimentary cross-field validation is objectively unreasonable under Safeco.

**G. Actual Damages**

39. As a direct and proximate result of Equifax's violations of the FCRA, Plaintiff has suffered actual damages including, but not limited to: emotional distress, frustration, confusion, and anxiety caused by the inability to understand, verify, and evaluate the information Equifax maintains in her credit file; impairment of her ability to effectively monitor and correct her credit profile; expenditure of time and personal resources investigating the errors and preparing to dispute them; and potential harm to her

creditworthiness and access to credit as a result of the inaccurate and incomplete information disseminated by Equifax to third-party purchasers of her consumer report.

## CAUSES OF ACTION

## COUNT I

## VIOLATION OF 15 U.S.C. § 1681g(a)(1)

## Willful and Negligent Failure to Clearly and Accurately Disclose All Information in Plaintiff's Consumer File

40. Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

41. Pursuant to 15 U.S.C. § 1681g(a)(1), upon a consumer's request, a CRA "shall clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681a(g) defines "file" to mean "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."

42. Upon Plaintiff's request on May 12, 2026, Equifax was obligated to clearly and accurately disclose all information in its file regarding Plaintiff as of that date.

43. Equifax breached this obligation by providing the May 2026 Disclosure, which contained in excess of one hundred (100) blank, missing, or unresolvable data fields across Plaintiff's eleven (11) trade lines, as specifically identified in the account-by-account inventory in Section B above and in Exhibit C. These omissions include, among others: (a) the complete absence of Actual Payment Amount data for all 23 months on the Macys/Citibank account; (b) the complete absence of Actual Payment Amount data for all 23 months on the Capital One account; (c) a total absence of 24-month history tables for the WFBNA Auto, TD Banknorth, Nelnet, Comenity/Victoria's Secret, and Grameen

America accounts; (d) blank Activity Designator, Terms Frequency, Date of Last Activity, and Date Closed fields on the SYNCB/Care Credit charged-off account; and (e) an internal conflict on the SYNCB/Care Credit account between the listed Last Payment Date and the blank Actual Payment Amount for the same month.

44. On information and belief, the data underlying each blank field existed in Equifax's internal database at the time of Plaintiff's disclosure request and was transmitted by Equifax to third-party purchasers of Plaintiff's consumer report. The May 2026 Disclosure is "unclear such that the consumer cannot determine the accuracy of the information" within the meaning of Alexander v. Equifax Info. Servs., LLC, 2018 WL 3025939, at *3 (D. Nev. 2018). The disclosure standard is further informed by Gillespie v. Trans Union Corp., 482 F.3d 907 (7th Cir. 2007), which held that "file" includes all data provided to third parties.

45. Equifax's conduct in systematically withholding data from consumer file disclosures while providing that data to third-party purchasers was willful within the meaning of 15 U.S.C. § 1681n and Safeco Insurance Co. of America v. Burr, 551 U.S. 47 (2007), as set forth in the Willfulness Allegations above.

46. In the alternative, Equifax's conduct was negligent within the meaning of 15 U.S.C. § 1681o.

47. As a direct and proximate result of Equifax's violations of 15 U.S.C. § 1681g(a)(1), Plaintiff has suffered actual damages as described above. Plaintiff is entitled to actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1), statutory damages of not less than $100.00 and not more than $1,000.00 per willful violation pursuant to 15 U.S.C.

§ 1681n(a)(1)(A), punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and costs of this action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

## COUNT II

## VIOLATION OF 15 U.S.C. § 1681e(b)

### Per Se Inaccuracy -- High Credit Exceeds Stated Credit Limit on Capital One Account

48. Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

49. Pursuant to 15 U.S.C. § 1681e(b), a CRA "shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" whenever it prepares a consumer report.

50. On or about April 9, 2026, Equifax furnished a consumer report regarding Plaintiff to Capital One Financial in connection with the hard inquiry reflected in the May 2026 Disclosure. That report reflected the Capital One Bank USA NA account (Account *0392) as having a Credit Limit of $3,122 and a High Credit of $3,811 -- an internal inconsistency in which the High Credit amount exceeds the stated Credit Limit by $689 across all twenty-three (23) months of reported history.

51. This internal data conflict constitutes a per se factual inaccuracy. A consumer report stating that a consumer's highest balance ($3,811) exceeds her credit limit ($3,122) on the same account in the same entry presents any reviewing creditor with two irreconcilable figures, at least one of which must be wrong: either (a) the credit limit is understated, in which case the consumer's true credit utilization is being overstated; or (b) the high credit is overstated, in which case the consumer's payment history is being misrepresented. Gorman v. Wolpoff and Abramson, LLP, 584 F.3d 1147 (9th Cir. 2009).

52. Equifax lacks reasonable procedures sufficient to detect and prevent the simultaneous publication of contradictory credit limit and high credit figures within the same trade line. The failure to implement a basic automated check comparing two fields on the same account entry before publishing a consumer report is objectively unreasonable under Safeco Insurance Co. of America v. Burr, 551 U.S. 47 (2007), constituting willful conduct within the meaning of 15 U.S.C. § 1681n.

53. In the alternative, Equifax's conduct was negligent within the meaning of 15 U.S.C. § 1681o.

54. As a direct and proximate result of Equifax's violations of 15 U.S.C. § 1681e(b), Plaintiff has suffered actual damages as described above. Plaintiff is entitled to actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1), statutory damages of not less than $100.00 and not more than $1,000.00 per willful violation per dissemination pursuant to 15 U.S.C. § 1681n(a)(1)(A), punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and costs of this action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

## COUNT III

## VIOLATION OF 15 U.S.C. § 1681e(b)

### Materially Misleading Reporting -- SYNCB/Care Credit Charge-Off Account

55. Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

56. The SYNCB/Care Credit account (Account *4678) is reported in Plaintiff's file as a Charge Off with a Charge Off Amount of $1,424. The Disclosure lists Narrative Code 035 ("First Payment Never Received") alongside subsequent payment records, including an Actual Payment Amount of $179 for September 2025 -- a facially irreconcilable internal conflict.

57. The account simultaneously carries: (a) a Last Payment Date of September 4, 2025; (b) a September 2025 Actual Payment Amount of $179; (c) Narrative Code 035 ("First Payment Never Received") as of June 2025; (d) blank Actual Payment Amount fields for every month from October 2025 through March 2026 despite the balance continuing to grow; and (e) an escalating balance from $896 in September 2025 to $1,424 in March 2026 with no payment credits recorded.

58. This combination of internally contradictory codes and omitted data fields creates a materially misleading portrayal of the account's history and status. A reviewing creditor cannot determine from this Disclosure whether: (a) the consumer made any payment at account opening; (b) how the balance grew post-charge-off; or (c) whether any payment was applied to the account in its final months before charge-off. The omission of this contextualizing information renders the reported account entry misleading in its overall effect, even if individual fields may be technically accurate in isolation. Pittman v. Experian Info. Sols., Inc., 901 F.3d 619, 639 (6th Cir. 2018) (credit information can be technically accurate but misleading); Gorman v. Wolpoff and Abramson, LLP, 584 F.3d 1147 (9th Cir. 2009).

59. On information and belief, Equifax failed to maintain reasonable procedures to ensure that charged-off account entries are reported with sufficient completeness to avoid materially misleading reviewing creditors and consumers.

60. Equifax's conduct was willful within the meaning of 15 U.S.C. § 1681n and Safeco Insurance Co. of America v. Burr, 551 U.S. 47 (2007), or in the alternative negligent within the meaning of 15 U.S.C. § 1681o.

61. As a direct and proximate result of Equifax's violations of 15 U.S.C. § 1681e(b), Plaintiff has suffered actual damages as described above. Plaintiff is entitled to actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1), statutory damages of not less than $100.00 and not more than $1,000.00 per willful violation pursuant to 15 U.S.C. § 1681n(a)(1)(A), punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and costs of this action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Luisa O. Baez-Lara respectfully requests that this Court enter judgment against Defendant Equifax Information Services, LLC as follows:

(a) Judgment in favor of Plaintiff and against Defendant on all counts;

(b) Actual damages suffered by Plaintiff as a proximate result of Equifax's FCRA violations, pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1);

(c) Statutory damages of not less than $100.00 and not more than $1,000.00 per willful violation, pursuant to 15 U.S.C. § 1681n(a)(1)(A), with each third-party dissemination of an inaccurate or incomplete consumer report constituting a separate violation;

(d) Punitive damages in such amount as this Court, in its discretion, finds sufficient to deter Equifax's willful disregard of consumer rights, pursuant to 15 U.S.C. § 1681n(a)(2);

(e) Costs of this action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

(f) Injunctive relief requiring Equifax to provide Plaintiff with a complete and corrected file disclosure as required by 15 U.S.C. § 1681g(a)(1); and

(g) Such other and further relief as this Court deems just and proper.

Plaintiff reserves the right to amend this Complaint pursuant to Federal Rule of Civil Procedure 15(a) to add reinvestigation counts under 15 U.S.C. § 1681i following expiration of the CRA's 30-day reinvestigation window.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Luisa O. Baez-Lara hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Luisa Baez-Lara

Luisa O. Baez-Lara

Pro Se Plaintiff

Luisaobaezlara@gmail.com

101 Dale St., Apt. 11

Roxbury, Massachusetts 02119

Dated: ____5/28/26________________________